OPINION
{¶ 1} Plaintiffs-appellants Glenn and Cheryl Werstler appeal the June 13, 2002 Judgment Entry of the Stark County Court of Common Pleas, which granted summary judgment against them, and in favor of defendant-appellee Westfield Insurance Company ("Westfield").
 STATEMENT OF THE CASE AND FACTS {¶ 2} On August 5, 1999, Glenn Werstler was involved in a two car collision caused by the negligence of R. Steven Jackson. At the time of the accident, Cheryl Werstler was married to and living in the same household as Glenn. The tortfeasor was insured by an automobile liability policy issued by Amica Mutual Insurance Company with a coverage limit of $500,000. The Werstlers exhausted the tortfeasor's liability coverage through settlement.
 {¶ 3} On August 5, 1999, Glenn Werstler was employed by Liberty Vending, Inc. At the time of the accident, Liberty Vending was a named insured under a commercial insurance coverage policy issued by Westfield. The policy period was from October 26, 1997, to October 26, 2000. The policy consists of three parts: 1) commercial property coverage; 2) commercial general liability coverage ("CGL"); and 3) commercial automobile coverage. The commercial automobile coverage provided UM/UIM coverage in the amount of $500,000 per accident. Westfield admitted the Werstlers were entitled to UM/UIM coverage under the commercial automobile coverage part.
 {¶ 4} The CGL portion of the policy had general aggregate coverage in the amount of $1,000,000. On August 2, 2001, the Werstler's filed a complaint against the tortfeasor for personal injury and against Westfield for declaratory judgment relative to UM/UIM coverage under the CGL.[1] On February 19, 2002, Westfield filed its motion for summary judgment. On March 29, 2002, appellants filed their motion for summary judgment. The parties entered into stipulations and the matter was submitted to the trial court.
 {¶ 5} Appellants argued they were entitled to coverage under the CGL pursuant to Scott-Pontzer v. Liberty Mutual Ins. Co. (1999),85 Ohio St.3d 660, and Ezawa v. Yasuda Fire Marine Ins. Co. of Am.
(1999), 86 Ohio St.3d 557, R.C. 3937.18(L) and (L)(2). Appellants further maintained the CGL coverage was an automobile liability policy pursuant to R.C. 3937.18(L), and operated as an umbrella policy to the commercial auto and commercial property parts. Westfield submitted the commercial general liability was not an automobile liability policy, arguing R.C.3937.18, as amended by H.B. 261, effective September 3, 1997, precluded coverage.
 {¶ 6} In a June 13, 2002 Judgment Entry, the trial court found the CGL was not an automobile policy as defined under R.C. 3837.18(L) as amended by H.B. 261. Further, the trial court found the Westfield CGL was not an umbrella policy written as excess over the commercial automobile and personal property coverage parts. Accordingly, the trial court granted summary judgment in favor of Westfield and against appellants.
 {¶ 7} It is from this judgment entry appellants prosecute their appeal, assigning the following errors for our review:
 {¶ 8} "I. The Trial Court Erred As A Matter Of Law In Concluding That Westfield's Commercial General Liability Policy Was Not An Automobile Liability Policy Of Insurance Under R.C. 3937.19(L)(1) [SIC].
 {¶ 9} "II. The Trial Court Erred As A Matter Of Law In Concluding That Westfield's Commercial General Liability Policy Was Not An Umbrella Policy Under 3937.19(L)(2) [SIC].
 {¶ 10} "III. The Trial Court Erred As A Matter Of Law In Concluding That Glenn And Cheryl Werstler Were Not Insureds Under Westfield's Commercial General Liability Policy."
 I. {¶ 11} In appellants' first assignment of error, they maintain the trial court erred in finding Westfield's CGL was not an automobile liability policy of insurance pursuant to R.C. 3937.18(L)(1). We disagree.
 {¶ 12} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36.
 {¶ 13} Civ.R. 56(C) states, in pertinent part:
 {¶ 14} "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 15} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v.Burt (1996), 75 Ohio St.3d 280.
 {¶ 16} It is based upon this standard we review appellant's assignment of error.
 {¶ 17} R.C. 3937.18(L)(1), as it existed on August 5, 1999, stated in relevant part:
 {¶ 18} "(L) As used in this section, "automobile liability or motor vehicle liability policy of insurance" means either of the following:
 {¶ 19} "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
 {¶ 20} "(2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section."
 {¶ 21} The CGL provides, in relevant part:
 {¶ 22} "Section I-Coverages
 {¶ 23} "2. Exclusions
 {¶ 24} "This Insurance does not apply to * * *
 {¶ 25} "g. Aircraft, Auto or Watercraft
 {¶ 26} "`Bodily injury' or `property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, `auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and `loading or unloading.'
 {¶ 27} "This exclusion does not apply to * * *
 {¶ 28} "(3) Parking an `auto' on, or on the ways next to, premises you own or rent, provided the `auto' is not owned by or rented or loaned to you or the insureds;* * *
 {¶ 29} "h. Mobile Equipment
 {¶ 30} "`Bodily injury' or `property damage' arising out of:
 {¶ 31} "(1) The transportation of `mobile equipment' by an `auto' owned or operated by or rented or loaned to any insured; or
 {¶ 32} "(2) The use of `mobile equipment' in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.* * *
 {¶ 33} "Section II — Who Is an Insured
 {¶ 34} "3. With respect to `mobile equipment' registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission."
 {¶ 35} Appellants contend the above-quoted sections transform the CGL into a motor vehicle policy, requiring the offer of UM/UIM coverage. Because the applicable statute requires any motor vehicle liability policy to meet one of two definitions, we must analyze the above-referenced contract language in light of the statute. The issue before us is whether the valet parking provision and the mobile equipment provision are sufficient to meet the definition of motor-vehicle liability policy as defined in the statute. Because the policy does not specifically identify motor vehicles, we find the policy is not a motor vehicle liability policy as defined by R.C. 3937.18, as amended by S.B. 261. Accord Bowles v. Utica National Ins. Group, 2003-Ohio-254, Licking App. No. 02CA68("hired" and "non-owned" vehicle categories insufficient to satisfy "specifically identified" vehicle requirement in R.C. 3937.18 as amended by H.B. 261) ; Pugh v. Erie Ins. Exchange, 2002-Ohio-5929, Stark App. No. 2002CA00134 (mobile equipment provision insufficient to satisfy "specifically identified" vehicle requirement in R.C. 3937.18 as amended by H.B. 261); Pickett v. Ohio Farmer's Ins. Co., 2002-Ohio-259, Stark App. Nos. 2001CA00227, 2001CA00236 (mobile equipment provision in policy insufficient to satisfy "specifically identified vehicle requirement in R.C. 3937.18 as amended by H.B. 261.).
 {¶ 36} Because the policy did not specifically identify vehicles contained in either the mobile equipment provision or in the valet parking provision, we find the policy was not a motor vehicle policy pursuant to R.C. 3937.18(L)(1). Appellants' first assignment of error is overruled.
 II. {¶ 37} In appellants' second assignment of error, they contend the trial court erred in granting summary judgment because the commercial general liability policy was an umbrella policy pursuant to R.C.3937.18(L)(2). Specifically, appellants contend the CGL is, in a sense, an umbrella policy because it could fill in potential gaps in coverage under the commercial automobile policy. Because the CGL policy provides excess insurance under certain circumstances, appellants argue the CGL functions as an umbrella policy under those circumstances. We disagree.
 {¶ 38} Assuming, arguendo, a CGL policy which provides excess coverage could be considered an umbrella policy, the CGL in the matter sub judice does not meet the definition of motor vehicle policy as set forth in R.C. 3937.18(L)(2). For ease of reference, we restate the applicable code section:
 {¶ 39} "(L) As used in this section, "automobile liability or motor vehicle liability policy of insurance" means either of the following:
 {¶ 40} "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
 {¶ 41} "(2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section."
 {¶ 42} Appellants contend the CGL policy meets the definition of motor vehicle liability policy because it acts as an "umbrella liability policy of insurance written as excess over one or more policies described in [R.C. 3937.18(L)(1)]." In support of this proposition, appellants set forth the CGL policy language which states:
 {¶ 43} "Section IV — Commercial General Liability Conditions
 {¶ 44} "4. Other Insurance
 {¶ 45} "If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this CoveragePart * * * [some excess coverage may be available]. Commercial General Liability Policy at p. 9 of 14.
 {¶ 46} In order to determine if this language arguably meets the definition of a motor vehicle liability policy pursuant to R.C3937.18(L)(2), the relevant inquiry is whether either coverage A or B of the "coverage part" is a motor vehicle liability policy as described in R.C. 3937.18(L)(1).
 {¶ 47} Coverage A of the CGL coverage part provides coverage for bodily injury and property damage liability. While Coverage A provides coverage for "valet parking" and for "mobile equipment", Coverage A does not specifically identify any motor vehicle. CGL Coverage A(2)(g)(3) and (5). For the same reasons set forth in our analysis of appellant's first assignment of error, we find Coverage A is not a motor vehicle liability policy pursuant to R.C. 3937.18(L)(1). Therefore, even if the CGL provided umbrella coverage, it is not an umbrella "written as excess over one or more policies described in division (L)(1)." R.C. 3937.18(L)(2).
 {¶ 48} Coverage B of the CGL coverage part provides coverage for personal and advertising injury liability. Coverage B does not provide coverage for personal injury arising from the use of a motor vehicle. Accordingly, we find it is not a motor vehicle liability policy under R.C. 3937.18(L)(1). Further, because it is not a motor vehicle liability policy under R.C. 3937.18(L)(1), even if the CGL was an umbrella, it was not written as excess over a motor vehicle liability policy as defined in R.C. 3937.18(L)(1). Therefore, it cannot be a motor vehicle liability policy as defined in R.C. 3937.18(L)(2).
 {¶ 49} Appellants' second assignment of error is overruled.
 III. {¶ 50} In appellants' third assignment of error, they maintain the trial court erred in concluding they were not insured under the CGL. However, this assignment is predicated on our finding the CGL to be an automobile liability policy of insurance. In light of our findings in appellants' first and second assignments of error the CGL was not an automobile liability policy of insurance, appellants' third assignment of error is overruled.
 {¶ 51} The June 13, 2002 Judgment Entry of the Stark County Court of Common Pleas is affirmed.
Gwin, P.J. and Wise, J. concur
[1] On November 1, 2001, appellants dismissed their complaint against the tortfeasor with prejudice. On February 27, 2002, the appellants dismissed their complaint against Liberty Vending without prejudice.